**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-01395-WJM

CHARLES K. FORD,

     Applicant,

v.

RICK RAEMISCH, Executive Director, Colorado Department of Corrections, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

     This matter is before the Court on the amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 9) (the "Amended Application") filed *pro se* by Applicant Charles K. Ford. Respondents have filed an Answer to Petition for Writ of Habeas Corpus (ECF No. 24) ("the Answer"). Mr. Ford subsequently filed four letters (ECF Nos. 25, 27, 28, & 29) asserting that his claims have merit. After reviewing the Amended Application, the Answer, the state court record, and Mr. Ford's letters, the Court FINDS and CONCLUDES that the Amended Application should be denied and the case dismissed with prejudice.

## I. BACKGROUND

     Mr. Ford is challenging the validity of his conviction and sentence in Denver District Court case number 08CR10514. The following background information is taken from the opinion of the Colorado Court of Appeals on postconviction appeal.

     ¶ 2    In a city park, defendant got into a fistfight with the

victim.  After the fight ended and the victim was walking away, defendant acquired a gun from an acquaintance and shot the victim several times.  Although initially charged with first degree murder, pursuant to a plea agreement, defendant pleaded guilty to one count of second degree murder and one count of first degree assault in the shooting death of the victim.  As part of the plea agreement, defendant agreed to provide truthful information and testimony about other crimes and the perpetrators of those crimes.  In exchange, the prosecution agreed to limit the sentence to between thirty-five and sixty years in the custody of the Department of Corrections (DOC) and to allow the court to consider defendant's cooperation in those other cases in determining the sentence and whether to reduce the sentence on reconsideration.

¶ 3     Defendant's sentencing was postponed for several months to allow him to provide testimony on those other cases and to enable the court to consider his cooperation in arriving at an appropriate sentence within the stipulated range.  As it turned out, however, all of those cases were resolved without the prosecution needing defendant to testify.

¶ 4     Before sentencing, defendant's two attorneys, Mr. Rios and Ms. Frei, filed a Crim. P. 32(d) motion to withdraw defendant's guilty plea, alleging that they had provided ineffective assistance.  At the same time, they sought to withdraw as his counsel and to have alternate defense counsel appointed.  The district court denied both the Crim. P. 32(d) motion and counsel's motion to withdraw, and sentenced defendant to consecutive prison terms of thirty-two years on the second degree murder conviction and twelve years on the first degree assault conviction.  A division of this court affirmed the denial of defendant's Crim. P. 32(d) motion.  *See People v. Ford*, (Colo. App. No. 10CA1090, Mar. 15, 2012) (not published pursuant to C.A.R. 35(f)).

¶ 5     After the mandate issued following his direct appeal, defendant filed a pro se Crim. P. 35(b) motion for reconsideration of his sentence.  The district court denied that motion, finding that defendant's sentence was within the range provided for in the plea agreement, was appropriate when entered, and remained appropriate.

¶ 6     Defendant thereafter filed a pro se Crim. P. 35(c) motion alleging that he received ineffective assistance of counsel because (1) Mr. Rios promised him that his initial sentence would be cut in half on reconsideration; (2) Mr. Rios did not accurately advise him that he would have to serve seventy-five percent of his sentence before becoming parole eligible; (3) he was promised as part of the plea agreement that he would be transferred out of state, but Mr. Rios failed to require specific performance of that promise; and (4) he was coerced into pleading guilty because his attorneys failed to fully investigate the facts of the case and his self-defense claim and pressured him into accepting the plea. He also alleged that, but for counsel's deficient performance, he would not have accepted the plea, and instead, would have insisted on going to trial.

¶ 7     The district court, by a written order, denied the claim regarding plea counsel's failure to investigate because defendant failed to allege with specificity what investigation could have been done, what the result of such an investigation would have been, and how it would have changed his decision to plead guilty. However, the court found that defendant's remaining claims had arguable merit and appointed counsel to represent him.

¶ 8     A supplemental motion filed by counsel reiterated defendant's first three claims, specifically alleging that plea counsel had promised defendant he would be sentenced to thirty-five years and that the sentence would be reduced to seventeen and a half years upon reconsideration. The supplemental motion alleged that the promises made as part of the plea agreement were unenforceable and that defendant therefore should be allowed to withdraw his plea.

¶ 9     At the postconviction hearing, defendant, Mr. Rios, Ms. Frei, and the district attorney testified. The court denied defendant's motion by a written order. The court found credible Mr. Rios' testimony that he never promised defendant a sentence of thirty-five years or told him that it would be cut in half on reconsideration. The court also found that the plea agreement did not include a promise that defendant would serve his sentence out of state. The court noted that neither the People nor defendant's attorney had the authority to get him transferred, but that they could make a request to the DOC for such a transfer, which was

> completely within the DOC's discretion. Thus, the court
> concluded that because defendant was fully advised about
> his plea agreement and Rios did not make additional
> promises to him, he failed to establish that his counsel's
> performance was deficient.

(ECF No. 14-6 at 3-7) (*People v. Ford*, No. 15CA0438 (Colo. App. Mar. 16, 2017)

(unpublished)). The Colorado Court of Appeals affirmed the trial court's order denying

the Rule 35(c) motion. (See ECF No. 14-6).

Mr. Ford asserts two claims in the Amended Application. According to

Respondents, Mr. Ford contends in claim 1 that counsel were ineffective when they: (a)

promised Mr. Ford his initial sentence would be cut in half on reconsideration; (b) did

not accurately advise Mr. Ford he would have to serve seventy-five percent of his

sentence before being eligible for parole; (c) failed to require specific performance of a

plea-agreement promise that Mr. Ford would be transferred out of state for his safety;

and (d) coerced Mr. Ford's guilty plea by failing to fully investigate the facts of the case

and his self-defense claim. Mr. Ford contends in claim 2 that the terms of his plea

agreement were breached.

The Court previously entered an Order to Dismiss in Part (ECF No. 22)

dismissing claim 1(d) and claim 2.

## II. STANDARDS OF REVIEW

The Court must construe the Amended Application and other papers filed by Mr.

Ford liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404

U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*,

935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Ford bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *See Harrington v. Richter*, 562 U.S. 86, 98-99 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 98. Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98. In other words, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court

"must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Ford seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry under § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are

6

materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . .

could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Ford bears the burden of rebutting the presumption by clear and convincing evidence. The presumption of correctness applies to factual findings of the trial court as well as state appellate courts. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). The presumption of correctness also applies to implicit factual findings. *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017). "The standard is demanding but

not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court makes this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000). Notably, however, a second prejudice inquiry under *Brecht* is unnecessary in the context of an ineffective assistance of counsel claim in which prejudice under *Strickland* is shown.

*See Byrd v. Workman*, 645 F.3d 1159, 1167 n.9 (10th Cir. 2011).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III. MERITS OF REMAINING CLAIMS

Mr. Ford contends in each of his remaining claims that plea counsel were ineffective with respect to his sentence. It was clearly established when Mr. Ford was convicted that a defendant has a Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). Furthermore, "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To establish counsel was ineffective Mr. Ford must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Mr. Ford's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Under the prejudice prong Mr. Ford must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Richter*, 562 U.S. at 112 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable."). A defendant is prejudiced by counsel's deficient performance that allegedly led to the improvident acceptance of a guilty plea if "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. In determining whether Mr. Ford has established prejudice the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Ford. *See Boyd*, 179 F.3d at 914.

If Mr. Ford fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See Strickland*, 466 U.S. at 697. Furthermore, conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

In addressing Mr. Ford's ineffective assistance of counsel claims the Colorado Court of Appeals initially recounted the evidence presented to the trial court in the postconviction proceedings.

### 1.  Crim. P. 11 Advisement

¶ 11    Defendant's written Crim. P. 11 advisement provided

that defendant would plead guilty to one count of second degree murder and one count of first degree assault, that the prosecution would dismiss the original charge of first degree murder, that defendant would be sentenced to between thirty-five and sixty years in prison for these offenses, and that defendant would have to cooperate fully with the prosecution in other cases, including by giving truthful testimony.

### 2. Video of Plea Agreement

¶ 12    A videotaped recording of the prosecutor, made in the presence of defendant's lawyers, explaining the plea agreement to defendant was admitted as an exhibit at the postconviction hearing.  In that video, the prosecutor reiterated that the agreement was that defendant would provide complete and truthful information and testimony in any subsequent hearing, trial or court proceeding at which the prosecution would require him to testify.  In exchange, the prosecution was offering him the chance to plead guilty in this murder case and be sentenced to between thirty-five and sixty years in prison, plus a period of parole.  The prosecutor explained that what would drive defendant's ultimate sentence would be his level of cooperation and truthfulness in subsequent court cases.  The prosecutor also stated that, because defendant was providing information, he would, as part of the plea agreement, contact the DOC and request that defendant be incarcerated somewhere outside of Colorado, but that he could not promise that the DOC would do that and could not make any promise as to where defendant would be incarcerated.

### 3. Defendant's Testimony

¶ 13    Defendant testified consistently with the allegations in his motion.  He told the court that Mr. Rios and Ms. Frei were the public defenders appointed to represent him in this case, and that he understood Mr. Rios as telling him that "I could - a plea deal was offered to me.  And upon my testimony in my codefendant's case I would plead guilty to a 35-year sentence.  He would file a 35(b).  It would be cut in half to 17 years.  And upon me getting the 17, I would possibly - I would be able to get it to be housed out of state."  He also said that there was no discussion about how much time he would serve with any kind of parole calculation.

¶ 14     Further, when testifying about why he agreed to the plea, defendant said, "Mr. Rios had repeatedly stated 35 being cut in half to 17.  It was the only reason."

¶ 15     On cross-examination, defendant stated he did not remember being told that whether he got transferred out of state was up to the DOC's discretion and that the prosecutor could not promise that he would get transferred.  He did say, however, that he never asked Mr. Rios or the prosecutor to have him moved out of state.  On recross-examination, defendant admitted that he understood that the prosecutor wanted to keep him safe and that unless he was named as a witness in a particular case or asked to be moved, the prosecutor was not going to try to get him moved.

### 4.  Ms. Frei's Testimony

¶ 16     Ms. Frei testified that she was second chair on defendant's case and was not present during all of the conversations Mr. Rios had with defendant.  However, she testified that she was present during a conversation between defendant and Mr. Rios just before defendant entered his guilty plea in which Mr. Rios explained the plea agreement to defendant.  She said that because the range was large, defendant was concerned with the actual number of years he would get, and Mr. Rios indicated that he thought defendant would get a sentence in the low end, thirty-five or thirty-six years, and that he believed defendant was looking for a sentence in the range of eighteen years.  She testified that she was concerned about Mr. Rios's use of those numbers with defendant, because she thought defendant would interpret those numbers as promises or guarantees. She also said that she had "developed a very strong sense from that conversation that [Mr. Rios] was implying to [defendant] that he had some sort of kind of unwritten understanding with the prosecution that that's where it would go."

¶ 17     Ms. Frei also testified that in rating the representation defendant received, she would characterize it as "sloppy," and when asked if she thought he received effective assistance of counsel, she answered: "Not in terms of the advisement that he received as to the plea agreement and what was a given and not a given, no."

¶ 18    However, when asked on cross-examination whether Mr. Rios was promising defendant a particular sentence, she testified that her recollection of the conversation was that she thought "Mr. Rios was forecasting and using his experience to estimate what he believed [defendant] would get.  That he would get a sentence on the lower end of the range."  She also conceded that she was aware that any Crim. P. 35(b) reduction would be contingent on defendant's performance in those other cases and that she had never been privy to any discussion about defendant being moved out of state.

### 5.  Mr. Rios's Testimony

¶ 19    As pertinent here, Mr. Rios testified that he explained the terms of the plea agreement to defendant, specifically that the sentence would be in the thirty-five to sixty year range and that there was no guarantee of what sentence the court would impose.  However, he told defendant that he believed it could be in the lower end of the range and then reduced upon reconsideration.  He also stated that defendant was aware that any potential reduction could not be part of the plea agreement because it was contingent on unknown events related to the other cases.

¶ 20    In addition, he explained that he discussed with defendant that he would have to serve seventy-five percent of his sentence because his offenses were crimes of violence, but that according to someone in the DOC time computation department, if defendant behaved, that number could be reduced to as low as fifty-five percent.  He also testified that the number seventeen came up, but that it was in connection with a discussion about what defendant could ultimately end up serving.  He stated that he told defendant if the court reduced his initial sentence on reconsideration to the minimum possible (twenty-six years), and if defendant earned good time and earned time and behaved, he might be eligible for parole after seventeen years.

¶ 21    In addition, although Mr. Rios indicated he never gave defendant inaccurate advice, he testified that he did not anticipate that all of the cases in which defendant provided information to the police would be resolved without the use of defendant's testimony.  Mr. Rios opined that he therefore

may have been ineffective because he did not advise defendant of that possibility.

### 6. Prosecutor's Testimony

¶ 22    The prosecutor who handled defendant's case testified that he had a strong case against defendant for the murder, that defendant had prior experience with the criminal justice system and offered information on a number of other crimes, including other murders, in exchange for a plea agreement.  The disposition reached was thirty-five to sixty years, but the ultimate sentence was contingent upon defendant's cooperation and the truthfulness of his information.  Thus, a reduced sentence as part of a Crim. P. 35(b) motion was not part of the plea because the quality of defendant's information at that time was unknown.  In addition, the prosecutor testified that defendant was concerned for his safety and was interested in being relocated, but indicated he had children and family in the state and did not necessarily want to go out of state.  He was, however, interested in whether that was a possibility. In addressing that concern, the prosecutor said he told defendant he could not promise a transfer because that was up to the DOC to decide, but that if he came to him and wanted a transfer, he would go to the DOC and make that request for him.

(ECF No. 14-6 at 7-14 (brackets in original).)  The Colorado Court of Appeals then recited the trial court's findings and conclusions.

¶ 23    In the order denying defendant's motion, the postconviction court found that defendant's testimony was not credible and rejected his arguments.  Specifically, the court noted that defendant's testimony at the postconviction hearing contradicted the statements he made at his providency hearing; and that if he was under the impression that he would be sentenced closer to thirty-five years with the possibility of a lower sentence, he had an opportunity at his providency hearing to so inform the court, but did not do so.  In addition, the court found unpersuasive defendant's argument that his attorney promised him he would file a Crim. P. 35(b) motion and that his initial sentence would be cut in half.  Neither the written plea agreement nor the providency hearing included such promises.  Thus, the court

found that defendant had not been promised either a particular sentence or that it would be reduced on reconsideration. As for defendant's claim about serving his sentence out of state, the court found, based on the testimony of Mr. Rios and the prosecutor, that no such promise had been made. Further, the court found that defendant never asked Mr. Rios to be moved out of state.

(ECF No. 14-6 at 14-15.)

## A. Claim 1(a)

Mr. Ford contends in claim 1(a) that counsel were ineffective by promising his initial sentence would be cut in half on reconsideration. In the state court proceedings he also asserted a related argument that counsel promised his initial sentence would be thirty-five years. The Colorado Court of Appeals recited and applied the two-part *Strickland* test and rejected this claim because the record supported the trial court's findings.

> ¶ 30   Here, the court's findings are based on its assessment of the credibility of the testimony of defendant and the other witnesses. The court expressly found that it did not believe defendant's testimony that Mr. Rios promised him a specific sentence of thirty-five years and that it would later be cut in half on reconsideration. Notably, the court found that defendant's contrary statements at the providency hearing carried more weight than either his or Ms. Frei's testimony at the postconviction hearing. Particularly important to the court's determination was that defendant never told the court at his providency hearing that his understanding of the plea was different, or that anyone had made him any promises other than the ones discussed in open court. Further, in reaching its conclusion, the court found credible Mr. Rios's testimony that defendant understood that the court would ultimately determine his sentence.
>
> ¶ 31   The court's findings are supported by the record, which includes Mr. Rios's testimony that he never promised defendant a particular sentence and that his assessment of

a likely sentence was only a prediction based on his experience and that ultimately the judge would decide the sentence.  He also testified that he explained to defendant that his sentence would be based on his cooperation and testimony in the other cases, and that a reduction in his sentence would be dependent on his behavior in the DOC and what programs he completed.

¶ 32    In addition, the videotape of the plea agreement demonstrates that the prosecutor explained to defendant that his ultimate sentence would be up to the district court, but that defendant's truthfulness and cooperation in those other cases would be considered by the court in sentencing defendant.

¶ 33    Thus, although there was conflicting testimony at the postconviction hearing, we conclude that the court did not abuse its discretion in finding that defendant was properly advised about the sentence he could receive upon entry of his conviction.  As the court noted, if defendant received advice different from what was discussed at the providency hearing, he had an affirmative obligation to inform the court at that time.  *See People v. DiGuglielmo*, 33 P.3d 1248, 1251 (Colo. App. 2001).  Further, trial counsel's erroneous assessment or estimate of a probable sentence does not constitute ineffective assistance of counsel.  *See People v. Zuniga*, 80 P.3d 965, 973 (Colo. App. 2003); *People v. Williams*, 908 P.2d 1157, 1161 (Colo. App. 1995).

¶ 34    Defendant argues on appeal that the court ignored Mr. Rios's own statement that he believed he was ineffective in representing defendant because he never anticipated that all of the cases defendant provided information on would be disposed of without the use of his testimony.  However, because counsel's testimony about not anticipating how those cases would be resolved was based on hindsight, we conclude that it does not establish that counsel's conduct was deficient at the time defendant entered his guilty plea.  *See Dunlap*, 173 P.3d at 1062-63.

¶ 35    As for defendant's related assertion that his attorney promised that his initial sentence would be cut in half upon the filing of a Crim. P. 35(b) motion for reconsideration, the court found that defendant had never been promised that the reduction would be automatic, but rather, had been

> advised that any Crim. P. 35(b) reduction would be
> dependent on his testimony in the other cases and would be
> discretionary.  Again, this finding is supported by the record.
> Specifically, Mr. Rios testified that he discussed the possible
> reduction in the sentence upon a Crim. P. 35(b) motion for
> reconsideration with defendant, and that based on the
> information or testimony he provided in those other cases
> and his behavior in the DOC, the court could, in its
> discretion, reduce his sentence, but that the number could
> not go below the minimum sentence required for the crimes.

(ECF No. 14-6 at 19-22.)

Mr. Ford does not argue that the state court's decision with respect to claim 1(a) is contrary to *Strickland* under § 2254(d)(1).  In other words, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.  *See House*, 527 F.3d at 1018.

Mr. Ford also fails to demonstrate the state court's decision with respect to claim 1(a) was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).  As noted above, the Court presumes the state court's factual determinations are correct and Mr. Ford bears the burden of rebutting the presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  Notably, the presumption of correctness applies to the determination that Mr. Ford was not credible when he testified he was promised a specific sentence of thirty-five years and that his sentence would be cut in half on reconsideration.  *See Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (treating a credibility determination as a factual determination in the habeas context).  The presumption of correctness also applies to the state court factual findings regarding the credibility of the other witnesses and the finding that neither the

18

written plea agreement nor the providency hearing included a promise of a particular sentence that would be cut in half upon reconsideration. Although Mr. Ford points to testimony from Mr. Rios that he may have been ineffective and from Ms. Frei that the representation was sloppy, he does not present clear and convincing evidence that would overcome the presumption of correctness. The mere existence of conflicting testimony, which the state courts acknowledged, is not clear and convincing evidence that overcomes the presumption of correctness. The conflicting testimony also does not demonstrate the state court's rejection of claim 1(a) was based on an unreasonable determination of the facts in light of the evidence presented.

Mr. Ford also fails to demonstrate the state court's ruling was an unreasonable application of the general *Strickland* standard under § 2254(d)(1). In light of the factual findings that Mr. Ford was not credible and that he was not promised a particular sentence or sentence reduction, it was not unreasonable for the state court to conclude this ineffective assistance of counsel claim lacks merit. It also was reasonable to rely on Mr. Ford's providency hearing statements that no other promises were made because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The state court also reasonably concluded that counsel's erroneous assessment of Mr. Ford's probable sentence is not sufficient to support an ineffective assistance of counsel claim. *See United States v. Washington*, 619 F.3d 1252, 1258-59 (10th Cir. 2010) ("Although defense counsel's predictions later proved incorrect, our precedent was clear that 'a miscalculation or erroneous sentence estimation' by a defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel.").

Mr. Ford is correct that Mr. Rios testified he was ineffective, but that admission related only to counsel's failure to anticipate that Mr. Ford's testimony might not be needed in the other cases for which he had offered information. Mr. Rios did not testify he was ineffective with respect to advising Mr. Ford about the sentencing range he faced or by promising his sentence would be cut in half. In any event, the state court reasonably concluded Mr. Rios's failure to anticipate how the other cases would be resolved was based on hindsight and did not establish counsel was ineffective.

Ultimately, Mr. Ford fails to demonstrate the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Therefore, he is not entitled to relief with respect to claim 1(a).

**B. Claim 1(b)**

Mr. Ford contends in claim 1(b) that counsel were ineffective because they failed to accurately advise him he would have to serve seventy-five percent of his sentence before being eligible for parole. The Colorado Court of Appeals did not explicitly address the precise argument Mr. Ford raises in claim 1(b). However, as noted above, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99; *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (an adjudication on the merits "does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

20

Mr. Ford does not argue that the Colorado Court of Appeals did not adjudicate the substance of claim 1(b) on the merits. Therefore, the Court considers claim 1(b) under the deferential standards in § 2254(d).

Mr. Ford fails to demonstrate that the decision of the Colorado Court of Appeals is contrary to clearly established federal law. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result under § 2254(d)(1). *See House*, 527 F.3d at 1018.

Mr. Ford also fails to demonstrate the state court's ruling with respect to claim 1(b) was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). The evidence presented included Mr. Ford's testimony "that there was no discussion about how much time he would serve with any kind of parole calculation" (ECF No. 14-6 at 9) and Mr. Frei's contradictory testimony that he advised Mr. Ford he would have to serve seventy-five percent of his sentence because his offenses were crimes of violence. As discussed in connection with claim 1(a), the state courts determined as a factual matter that Mr. Ford's testimony was not credible and that Mr. Frei's testimony was credible. Mr. Ford does not rebut the presumption of correctness that attaches to these factual determinations under § 2254(e)(1). Therefore, Mr. Ford is not entitled to relief under § 2254(d)(2).

Finally, Mr. Ford fails to demonstrate the state court's ruling was an unreasonable application of *Strickland* under § 2254(d)(1). In light of the presumptively correct factual determination that Mr. Frei accurately advised Mr. Ford about his parole eligibility, it was reasonable to conclude counsel was not ineffective.

Ultimately, Mr. Ford fails to demonstrate the state court's decision with respect to claim 1(b) "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Therefore, Mr. Ford is not entitled to relief with respect to claim 1(b).

## C. Claim 1(c)

Mr. Ford finally contends in claim 1(c) that counsel were ineffective by failing to require specific performance of a plea-agreement promise that Mr. Ford would be transferred out of state for his safety. The Colorado Court of Appeals considered this claim under *Strickland* and rejected it for the following reasons:

> ¶ 37 To the extent defendant argues in his reply brief that the court erred in finding that counsel's performance was not deficient as it related to the agreement to have him transferred out of state, we disagree.
>
> ¶ 38 First, as argued in his pro se motion, defendant alleged that he was promised he would be transferred to a prison out of state and that his counsel failed to enforce that promise. The postconviction court rejected this argument, finding that defendant's assertion of such a promise was incredible because neither the prosecutor nor defense counsel had the authority to make such a promise, as the DOC is responsible for making that decision. The evidence in the record supports the court's conclusion that no such promise was made. Specifically, the video recording of the plea agreement shows that the prosecutor explained in detail to defendant that he could not promise defendant would be transferred because the decision to make an out-of-state transfer was solely within the DOC's discretion.
>
> ¶ 39 Second, while the written motion focused on an alleged promise to be transferred, the testimony at the postconviction hearing seemed to suggest that the prosecution promised to request the transfer if defendant, through his attorney, specifically asked the prosecution to

make the request to the DOC. In defendant's closing argument at the postconviction hearing, he argued that counsel was ineffective for failing to make that request to the prosecutor.

¶ 40    The court summarily rejected this claim in its order, finding that defendant never asked his counsel to contact the prosecution to make the request. Again, because the record supports the court's order on this issue, we will not disturb it on appeal.

¶ 41    At the postconviction hearing, defendant testified that he never asked counsel to request that the prosecutor contact the DOC for a transfer. Also, Mr. Rios testified that prior to entry of the plea, defendant was ambivalent about whether he wanted to be moved out of state because he would not be near his family, and thus, he never asked the prosecutor to request the transfer. Accordingly, because the record supports the court's finding, we will not disturb it on appeal. *See Dunlap*, 173 P.3d at 1061-62.

(ECF No. 14-6 at 23-25.)

Mr. Ford again fails to demonstrate the decision of the Colorado Court of Appeals is contrary to clearly established federal law. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result under § 2254(d)(1). *See House*, 527 F.3d at 1018.

Mr. Ford also fails to demonstrate the state court's ruling with respect to claim 1(c) was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). The state courts determined as a factual matter that Mr. Ford was not promised he would be transferred out of state and that he never requested a transfer. These factual determinations are presumed correct under § 2254(e)(1) and Mr. Ford presents no evidence to overcome that presumption.

Therefore, he is not entitled to relief under § 2254(d)(2).

Finally, Mr. Ford fails to demonstrate the state court's ruling was an unreasonable application of *Strickland* under § 2254(d)(1). In light of the presumptively correct factual determination that Mr. Ford was not promised a transfer and that he never requested a transfer, he cannot demonstrate the state courts unreasonably concluded counsel was not ineffective. In other words, the state courts reasonably concluded counsel was not ineffective by failing to require specific performance of a nonexistent promise.

Ultimately, Mr. Ford fails to demonstrate the state court's decision with respect to claim 1(c) "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Therefore, he is not entitled to relief with respect to claim 1(c).

## V. CONCLUSION

In summary, the Court finds that Mr. Ford is not entitled to relief on his remaining claims. Accordingly, it is

**ORDERED** that the amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 9) is denied and this case is dismissed with prejudice. It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

Dated this 12th day of February, 2018.

BY THE COURT:

_____
William J. Martínez
United States District Judge